## Case No. 10,978.

### The PEREIRE.

[Affirming Case No. 10,979. Nowhere reported; opinion not now accessible.]

---

## Case No. 10,979.

### The PEREIRE.

[8 Ben. 301.] [1]

District Court, E. D. New York.   Dec., 1875.[2]

BILL OF LADING — EXEMPTION FROM DAMAGE BY BREAKAGE—NEGLIGENCE IN DISCHARGE OF CARGO—BURDEN OF PROOF.

Plate glass was brought by a steamship from Havre to New York, under a bill of lading, by which the steamship was exempted from liability for damage by breakage. When the glass arrived at the store of the consignees three of the cases were found to contain broken plates; and a libel was filed to recover the damage, which, it was alleged, was caused by negligence in the manner of discharging the cases: *Held,*

---

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

[2] [Affirmed by circuit court; case unreported.]

that the burden of proof was on the libellants, to establish that there had been such negligence on the part of the steamer as caused the breakage; and that. on the evidence, no such negligence was established.

[Cited in The Tommy, 16 Fed. 603; Wolff v. The Vaderland, 18 Fed. 740, 741.]

A French manufacturing corporation shipped plate glass by steamer from Havre to their agents in New York, under a bill of lading, which, by its terms, exempted the ship from liability for breakage. There were fifty cases of different sizes, some very large. When the cargo was unloaded at New York, four cases were put by themselves on the dock, and were there inspected by an agent of Noel & Saurel, the consignees, who at first refused to receive them, claiming that the glass was broken, but finally took them away. When the cases were afterwards opened in store, it appeared that in three of the cases there were one to six plates of glass broken; and suit was brought against the steamer, charging negligence in the transportation and handling of the glass. Much evidence was introduced on both sides, to show the usual manner of discharging such cases, many of which weighed more than a ton, and also the manner of discharging this particular cargo, and as to the marks of damage that appeared on the outside of the cases. The libellants· claimed to have proved that the glass was discharged on the flat instead of on the edge, and that the cases were broken by the prongs of a truck on which they were carried off from the ship's side, or that the plates were broken by the pressure of a roller on which the cases were rolled away. The claimants urged that the proof was, that the glass was discharged upon the edge, and in a machine built for the purpose and running on rollers, and that no negligence or carelessness was proved, and that the libellants had failed to prove that the glass was unbroken when the cases were received on board the ship.

G. W. Hoxie and H. G. Hull, for libellants.

R. D. Benedict and Walter L. Livingston, for claimants.

BENEDICT, District Judge. This action is brought to recover damages for the breaking of plates of glass, while being transported on board the steamship Pereire from Havre to New York.

The bill of lading, by its terms, exempts the ship from liability for breakage. In order, therefore, to maintain this action, it is necessary for the libellants to prove some negligent act on the part of the steamer in the transportation of the glass, and that such act caused the breakage in question.

Two different acts of negligence are assigned by the libellants as the cause of this breakage: one is that, in discharging the glass in New York, it was taken from the ship's tackle to a place on the dock some forty feet distant upon a truck, without proper protection for the horns of the truck, and that the weight of the case drove the horns of the truck through the case, splitting the boards, and, as it is inferred, breaking the glass. The other act of negligence assigned is moving the cases upon rollers, whereby, as it is also sought to be inferred, the glass was broken. The shipment consisted of fifty cases of various sizes. In three of these cases, when opened in the warehouse of the consignee, there were found broken plates. In case No. 4, one plate was broken; in one of the others four plates were broken, and in the other case six plates were broken.

Naturally, there is no direct proof of the cause of this breakage. It was not known with certainty that any glass was broken, until the cases were opened after having been carted to and delivered in the warehouse of the libellants. Indirect proof is given, by evidence of facts which indicate a negligence, the natural result of which would be a breaking of the glass. The evidence relied on as proof of negligence consists of testimony as to the outward appearance of the cases when they were delivered, and as to the mode of handling them in New York. In regard to the appearance of the cases, various witnesses are called by the libellants. These witnesses differ greatly among themselves in respect to the condition of the cases. Some speak of having seen "shiny" marks upon the side of a case, indicating resort to rollers in moving it on its flat. Some speak of a separation of the boards of a case; others of a split board, indicating a carriage of the case upon a truck, the prongs of which had penetrated the case. Several speak of a large splinter knocked off; others of marks indicating the use of a grapple, and that a fall had been sustained by reason of the tearing out of the grappling irons. The marks relied on by the libellants are those of truck prongs and roller marks, which, it is insisted, show that the cases were moved on the flat upon rollers and upon trucks. It is impossible from the evidence to say that each of the three cases presented the same marks; some witnesses were led to say so, but it is quite clear, from what they say, that some cases bore marks not found upon the others. For instance, but one case had a splinter knocked off; and, as I gather, but one case had a split board.

It appears that these three cases, after they were landed, were, together with one other case, placed upon the edge, leaning one against the other, and all supported by the side of the dock shed; while there they were examined by Cassidy, a person sent by the consignees to ascertain the condition of the cases, and who is the first witness called by the libellants. According to this witness, there were shiny marks on some of the cases, which he supposed to have been caused by rolling the case upon a roller. He says that some of the boards on more than one of the cases had been separated by a grapple,

but he makes no mention of any split board or any injury by truck prongs, nor does he suggest that the cases appeared to have been moved on trucks. He does mention marks of a slipping from the hooks of a grapple. Upon the testimony of this witness, it would be impossible to say that the cases had been injured by being rolled or while being carried on a truck. The only inference warranted from Cassidy's testimony is that the cases had slipped from a grapple, and this plainly appears to have been his inference.

Noel, one of the consignees and the next witness, proves a splinter knocked off from one case, but he did not see either the "shiny" marks or the marks of a slipping of a grappling iron which Cassidy speaks of. He saw a split in the boards half an inch wide or more, and says the case had been put on a truck with two sharp edges, which edges went into the box and stripped the plank all the way through. Millick, a notary sent for to be present when the cases were opened in the warehouse, is sworn, but gives no evidence in respect to the condition of the cases. Curiously, he was not asked to examine them. Behan, the carman of the consignees, proves the splinter broken off; he saw a broad split as by the spikes of a truck; also marks "like a bruise or something rubbing heavy on it." He speaks of the cases as "shattered," but saw no separation of the boards from each other. The condition of the cases before they were carted from the dock was a subject of conversation between this witness and Cassidy; it is noticeable that Behan does not mention the marks of a grapple which Cassidy found, and which led him to infer that the cases had been injured by a fall.

Max Charronet, the next witness, is a glass polisher, who, as it appears, was sent to several of the steamers of this line to observe how glass consigned to Noel & Saurel was handled. He says that he saw the discharge of all the consignments in question. In respect to the appearance of the cases, his recollection is that none of them showed marks of a grapple or marks of a truck prong, nor was there any board split. All that he recollects as to marks on the cases is that on one of the cases a board appeared "pressed in so that you could put your fingers through," and one of the cases showed marks which indicated that it had been rolled on a roller. If the language of this witness is to be taken literally, these marks were on the cases when they came out of the ship. In respect to this witness, it cannot escape remark that he says his practice was to make a written report of what he saw in respect to the glass he was sent to observe, and that he made such a report in respect to this consignment, drawn out from memoranda taken by him at the time. This report passed to Cassidy, and its contents became known to him, but it seems to have

been considered as of little importance, and is not now found. The original memorandum is also lost. This unfortunate circumstance prevents the libellants from deriving any considerable advantage from the testimony of this witness, inasmuch as he declares himself unable to speak with certainty in the absence of his report or memorandum. And it affords ground for the suggestion, that, if the written report had stated any facts tending to support the present claim, it would have been preserved. The further facts, that the witness identified in court a person as present during the discharge of the glass of which he speaks, who is proved not to have been present at the discharge of the glass in question, coupled with the absence of the reports and the obscure recollection of the witness, raise a doubt as to his recollecting anything in regard to this particular glass.

I have now referred to all the evidence touching the external appearance of the cases, which was produced as evidence in chief by the libellants; and when its discrepancies and omissions are considered, and, in the absence of any good reason for not removing all doubt as to the marks upon the cases by producing them in court, it must be said that upon this evidence alone it would be difficult to find as a fact either that these three cases had been rolled on a roller or split by the prongs of a truck.

Nor is this evidence greatly strengthened by the direct evidence offered by the libellants in respect to the mode of discharging this glass. One witness, Squires, says that he saw one of the cases placed on a hand truck, the prongs of which went through the case and split the board; but the witness also states that the case was moved off upon a single truck by a single man, a thing shown to be impossible. Moreover, Squires is a discharged employee, and the circumstance he claims to have seen was not seen by any one else, although many others were present during all the discharging.

There is also some direct evidence tending to show that rollers were used to move the cases; but there is also much evidence to the contrary, and the marks upon the cases, instead of confirming the statement that rollers were used, are such as would be caused by rubbing against the stanchions in the ship's hold. Furthermore, it appears from the libellants' evidence that glass of this description is an article in which some breakage always occurs. Of this consignment of fifty cases, three cases are found to contain broken glass. All the cases were discharged in the same manner in New York. Two of these which contained the broken glass bear marks of having slipped from a grapple, and it is not claimed that any grapple was used on board the ship. The contrary was proved. The fair inference from all this is, that the breakage arose from a fall from a grapple, and not from the mode of discharging.

As against the evidence produced by the libellants, the claimants have presented much testimony, which, if believed, is conceded to be sufficient to disprove negligence. It appears that, for the use of the line of steamers to which the Pereire belongs, there had been constructed a machine or frame, fitted with rollers under it and rollers upon its bottom within, into which large glass could be lowered upon its edge from the ship, and so moved in the machine to its place on the dock. Some six or seven witnesses swear that all the glass of this consignment was discharged in this machine. If this be true, the negligence charged is disproved. But three or four witnesses called by the libellants swear that the machine was not used at all on this occasion. The contradiction is positive, and can only be explained by supposing that the witnesses are speaking of different trips—an explanation hardly admissible in view of the definite statements made. If not thus explained, I am of the opinion that credit must be given to those who testify to the use of the machine; for I mark that one witness called by the libellants, in contradiction of the other witnesses for the libellants, swears that the machine was used to discharge this glass until one of the rollers broke, when it was cast aside and never used after. The breaking of the machine during the discharging is also stated by the witnesses for the respondent, but they further state that, when the roller broke, the frame was at once turned round and used throughout the discharging without difficulty. It would appear, then, that the machine was used, to a certain extent, in discharging this consignment; and, if used at all, the fact is sufficient to discredit the testimony of the witnesses produced by the libellants, who swear positively that it was not used at all.

Furthermore, these three cases were examined by the agent of the line, as well as the master of the steamer, while they were upon the dock, and after notice that their appearance indicated damage; and these witnesses concur in the statement, that the cases bore no evidence of negligent handling in the discharging. These witnesses have no substantial interest in the question; they are not responsible for the discharging. Their interest would be to discover evidence to cast the loss upon the stevedore in case there turned out to be a loss; but they, as well as the second captain of the steamer, are positive that no evidence of injury in the discharging was found upon the cases.

Upon the whole case, therefore, as it is made by the evidence before me my conclusion must be, that the libellants have failed to prove that the breakage in question was caused by the negligence of the ship.

The libel is accordingly dismissed with costs.

[On appeal to the circuit court the decree of this court was affirmed. Case unreported.]