## THE CIMBRIA.

*(District Court, E. D. New York. June 30, 1882.)*

SHIPPING—NEGLIGENT STOWAGE—LIABILITY FOR LOSS.

In the stowage of drums of glycerine care must be taken to prevent working of the tiers in case of springing of the ship, and the vessel will be liable for loss or damage where the exercise of proper care would have prevented any injury arising from any springing of the ship.

*Scudder & Carter*, for libellants.

*Butler, Stillman & Hubbard*, for respondents.

BENEDICT, D. J. This action is to recover for the loss of the contents of two drums of glycerine, during a voyage from Hamburgh to New York, on the steamer Cimbria. The two drums in question formed part of a shipment consisting of 26 drums, made under an ordinary bill of lading, wherein is an exception of liability for damage caused by perils of the seas or arising through insufficiency in strength of the packages. The drums when shipped were in good order; upon arrival two of them were found to have been cut through, apparently by a sharp edge, and the contents gone. These drums were of sheet iron, in thickness about three-sixteenths of an inch, with heads about 28 inches in diameter. On each end, where the head was joined, was a ridge or rim, and around each drum at the middle were two iron rings, projecting from the surface of the drum from one and three-fourths to one and one-half inches; the body of the drum being in this way protected by these rolling rings, on which the drum rests. Drums constructed in this manner, for the purpose of transporting glycerine, have been used for some time on Atlantic voyages, and have proved to be sufficient for the purpose.

The testimony warrants the inference that the cuts in the drum in question were caused by pressure of the rolling rings of another drum during the voyage of importation.

On the part of the vessel it is contended, first, that the loss of the glycerine arose from the insufficiency of the drums, and therefore is not to be borne by the ship. But the testimony does not support this contention. Neither the special exception in this bill of lading nor the law will absolve the ship from liability when merchandise of this character is placed in a vessel sufficiently strong to withstand the necessary pressure which arises from ordinary stowage and ordinary handling during an Atlantic voyage. The drums in question are proved to be sufficient, with the rule as above stated.

It is next contended on the part of the ship that the loss arose from a peril of the seas; and it has been proved that during the voyage in question the steamer encountered unusually heavy weather, which caused the steamer to labor heavily, and that during the heavy weather the drums of glycerine were found to be rolling on two occasions, when they were restowed, and thenceforth were not moved by the heavy seas. From this testimony the fair inference is that the cuts in the drums under consideration were made while the tiers were thus working during the storms. The question then arises whether due care was used in the stowing of the drums at the port of shipment. The stowage was as follows: The drums were stowed in tiers upon the lower deck, with nothing above them. Each drum was chocked with pieces of wood so as to leave about one-half an inch between the rolling rings of the drums. These chocks were placed horizontally between the drums, and what happened was that the drums moved so as to permit some of the chocks to drop down, when, of course, the whole tier became loose. While so loose the rolling rings of some of the drums would be likely to come in contact with the body of other drums, and in this way, doubtless, the two drums in question were cut through. At the time when the drums were discovered to have shifted they were restowed, and then with upright chocks. In this way the tiers were so fastened that they no longer moved. The character of the drums made it plain that if the tiers should get loose on the voyage the drums would be likely to cut each other, and called for unusual care to prevent a working of the tiers. But according to the testimony of the officer who stowed these drums no greater care was taken in stowing them than is taken with wine casks, or casks of any spirits or liquors or cherry juice. It seems to me not unreasonable to require, in respect to drums of this

character, in the original stowing the exercise of the same care to prevent working that was afterwards taken when the drums were found to be rolling, and because of the absence of such care I hold the ship responsible.

I have not overlooked the testimony to the effect that an iron steamer will spring in such heavy weather as this vessel experienced, and that it is not possible so to stow a cargo that it will not loosen when the steamer springs under such circumstances. But I am satisfied that the exercise of proper care in the stowing of those drums would have prevented injury arising from any springing of the ship.

There must, therefore, be a decree for the libelant.

---

## THE ANT.

### District Court, D. New Jersey. July 13, 1882.)

COLLISION—MEASURE OF DAMAGES FOR LOSS.

In case of a total loss of a canal-boat and her cargo of coal by a collision the measure of damages is the value of the boat and of the cargo immediately preceding the collision. So, where a canal-boat was sunk in 40 feet of water, and there purchased and raised, and floated to a distance, and was there sunk and destroyed by a collision, the measure of damages was the price paid for her where she was first sunk, the value of her cargo, and the expenses incurred in raising and floating her to the place of the collision.

Libel *in rem.*

*Beebe, Wilcox & Hobbs,* for libelants.

*Benedict, Taft & Benedict,* for claimants.