THE BITTERNE.[1]

CRANDALL *v.* THE BITTERNE.

*(District Court, E. D. New York.  July 27, 1888.)*

SHIPPING—DAMAGE TO CARGO—NEGLIGENT STOWAGE—RAPE-SEED ABOVE CHALK.
It is negligence in a vessel to stow bags of rape-seed over chalk in the hold of a vessel, in view of the certainty of damage to the chalk in case the bags of seed should be broken.

In Admiralty.
*Horace Graves* and *R. D. Benedict,* for libelant.
*Wing, Shoudy & Putnam,* for claimants.

BENEDICT, J. This is an action brought to recover upon a bill of lading for a failure to deliver in like good order a quantity of chalk shipped

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

on board the steam-ship Bitterne. The evidence shows that the chalk was stowed in a pile in the hold of the ship, there leveled over, and a sail and canvas spread over it, and upon these pine boards. On the boards bags of rape-seed were stowed. Upon the arrival of the ship in New York, the chalk, when taken into the lighter, seemed to be permeated with black specks, and soon after, when exposed to the air, it became covered with verdure; in fact, a very fair crop was growing upon it, thus rendering it valueless as an article of commerce. The reason of this was that, from some cause or other, the bags of rape-seed stowed over the chalk had broken during the voyage, and so the seed was let down upon the chalk, where of course it germinated, with the results stated. The question of the case is whether it was negligence on the part of the ship to stow bags of rape-seed over chalk. In my opinion it was negligence. The chalk being an earthy substance, common knowledge would inform any one that rape-seed sown upon it would germinate under favorable conditions. The possibility that the bags of rape-seed might be broken in the voyage, and that in that event the seed would fall upon the chalk, was a matter to be taken into account by the master, and it was his duty to guard against the possibility of such an occurrence. The shipper could not know that seed was to be stowed over his chalk, but both he and the master knew that if seed was so stowed a breakage of the seed-bags would sow the chalk with seed. No doubt it was proper to stow the chalk at the bottom of the ship, and no doubt it was proper to stow other merchandise in the same hold; but in my opinion, in view of the certainty of damage to the chalk in case the bags of seed should be broken, it was negligence to stow the chalk under seed, when a breakage of the seed-bags would necessarily result in sowing the chalk with seed. Some effort has been made on the part of the claimant to rest a defense upon a clause in the bill of lading which exempts the ship from liability for wastage, leakage, breakage, or strainage of packages, or injury to wrappers, however caused. But this clause does not exempt them from liability for breakage of packages other than the packages named in the bill of lading. It is further suggested in behalf of the claimant that it was the germination of the seed that caused the damage, and that, inasmuch as the seed did not germinate until after the cargo had been discharged, there is no liability on the part of the ship. But the damage was done when the seed was sown upon the chalk; once sown, it could not be separated, and was sure to germinate. The libelant must have a decree for the amount of his damages, with a reference to ascertain the amount.