## THE MISSISSIPPI.

### (District Court, S. D. New York. February 28, 1902.)

1. SHIPPING—DAMAGE TO CARGO—NEGLIGENT STOWAGE.

A ship is liable for damage to cargo resulting from negligence in stowage, or in failing to properly cover a hatch to prevent leakage, notwithstanding any stipulations to the contrary in the bills of lading; nor is it relieved from such liability by the provisions of the Harter act.

2. SAME—GLYCERIN ABOVE DRY GOODS—INSUFFICIENT HATCH COVERING.

A steamship, on a voyage from London to New York, stowed a quantity of glycerin in iron drums in the orlop deck of a hold, while on the lower deck was a quantity of furs and skins. The drums were not so fastened as to prevent fore and aft motion, or to prevent their moving vertically in heavy weather; nor was the hatch of the orlop deck battened and calked, as were the hatches above. The ship encountered rough weather, and at the end of the voyage it was found that some of the drums had been chafed through and were empty, and that a quantity of the glycerin had washed over the coamings of the hatch, and damaged the goods below. Held, that in view of the dangerous character of glycerin as a cargo, owing to the frailty of the packages and the consequent liability of leakage, it was incumbent on the ship, if it stowed it above other cargo, to take proper precautions, both by securing it from shifting in heavy weather, and by rendering the hatch leading below absolutely tight, and its failure to do so was negligence, which rendered it liable for the resulting damage to the cargo below.

In Admiralty. Suit to recover for damage to cargo.

Black & Kneeland, for libelants.
Convers & Kirlin, for claimant.

ADAMS, District Judge.   Certain goods of the libelants, consisting of 45 bales of hatters' furs and skins, were shipped on the steamer Mississippi from London in February, 1897, consigned to the owners, in New York.   The vessel sailed on February 5th, and arrived at New York on February 20th.   These goods were injured by contact with glycerin, a part of the steamer's cargo, which escaped during the voyage from the iron drums in which it was contained, and this action was brought to recover the damages resulting therefrom.   The contention of the libelants is that the injury was caused by fault and negligence on the part of the steamer in the loading, stowage, custody, and care of the cargo, in that (1) the iron drums containing the glycerin were not properly stowed, dunnaged, and secured; (2) the drums of glycerin were improperly stowed in the orlop deck above the libelants' cargo; and (3) the orlop deck hatch was not tight.   The claimant denies any negligence, and asserts that the vessel met with a great storm and stress of wind on the voyage, which caused the iron drums to chafe against each other and leak, and that the injury was caused through the perils of the sea, and insufficient packages containing the glycerin, which causes of injury were covered by exceptions in the bills of lading.   It alleges that the deck hatch was secured in a proper way, and the leakage was in consequence of the tarpaulin covering being torn by the dunnage, which was broken loose by the extraordinary action of the sea.   A further defense is interposed, to the effect that it was provided in the bills of lading the shipowner was not to be liable for any damage to the goods on board capable of being covered by insurance, which was the case here; the goods having been actually insured.   The Harter act was also pleaded.

The evidence establishes great severity of the weather on the voyage, and, with respect to the cargo, that glycerin was stowed in the orlop deck of No. 1 hold, and the damaged cargo in No. 1 lower hold, under the glycerin.   When the vessel arrived in New York, it was found that a number of the drums were chafed through and empty; the glycerin having escaped so that it was from six inches to a foot deep on the orlop deck, and had washed over the coamings of the hatch of that deck upon the cargo in the square of the hatch below. The drums had been dunnaged and chocked when stowed, but not tommed or fastened down to prevent a vertical movement in heavy weather.   Nor were the drums protected by a bulkhead to prevent fore and aft motion.   The dunnage and chocks were not sufficient to secure the drums, and they became loose.   The dunnage and chocks, being broken up in small pieces and strewn all over the deck, formed a pulpy mass, which got into the scupper pipes, preventing the escape of the glycerin in that way to the bilges of the ship, and thus causing the washing of the glycerin over the coamings of the hatch.   It also appears that glycerin is considered a dangerous cargo, especially liable to leakage from the frailty of the packages, and for such reason

it is prudent to place it in the bottom of the carrying vessel. In this case it was the last of the cargo put into the hatch in question, and, instead of being in the bottom of the ship, was on the deck above. Under such circumstances, being placed above dry cargo without cargo on top to hold it in place, it was especially incumbent upon the carrier to adopt proper devices to meet the contingencies of the voyage, both by securing the cargo from shifting in heavy weather, and rendering the hatch leading below absolutely tight. In neither of these respects was the duty of the ship fulfilled. Only the usual method of stowing was adopted. The hatch, though covered with a tarpaulin, was not battened and calked, as were the hatches above, but left without any proper means of averting danger in case of the escape of the glycerin, excepting by the drainage scuppers, which proved to be insufficient.

It is urged with great vigor by the claimant that the libelants have not sustained the burden of proof to show negligence; but I think the circumstances, in connection with the testimony of the ship's officers, given when the matter was fresh in their minds, are sufficiently convincing that proper precautions were not taken by the vessel. If I am correct in the findings of negligent stowage and a leaky hatch, they are conclusive of the case, without regard to the other questions involved. The Niagara, 16 Blatchf. 516, 528, 529, Fed. Cas. No. 10,221; The Cimbria (D. C.) 13 Fed. 89; The Bitterne (D. C.) 35 Fed. 927; The Dunbritton, 19 C. C. A. 449, 73 Fed. 352, 366; The Aspasia (D. C.) 79 Fed. 91; Id., 26 C. C. A. 372, 80 Fed. 1003; The Frey (D. C.) 92 Fed. 667; Knott v. Worsted Mills, 179 U. S. 69, 73, 21 Sup. Ct. 30, 45 L. Ed. 90.

Decree for libelants, with an order of reference.